The last case to be argued this morning is 14-1497. This is RPost International Limited v. United States Postal Service. Whenever you're ready, you reserve five minutes. I would like to start with the following scenario. When you receive a letter or another hard copy document, you would stop to consider how did that document get to my desk. You think of UPS, you think of the Postal Service, and maybe some other companies. You receive an electronic message, an email, or some other type of electronic transmittal, and you stop to think of how that document, that electronic document, came to my computer screen or other device. Think of Microsoft, think of Google and AOL and maybe Yahoo and a bunch of other companies. What you wouldn't think of is the Postal Service. That, in our view, is the essence of this case. Is there any context or situation where the commercial transmission of an electronic message would come from the Postal Service? The answer to that is no, and there's no evidence that the answer to that is anything other than no. Then there's no likelihood of confusion, no possible confusion, in fact. Your identified services invokes the Postal Service's service of registered mail. Correct. The whole point of your using the term registered email is to demonstrate that what you're doing is an extension of what the Post Office has been doing for over 150 years. It's not an extension of what they're doing, providing... But that's how consumers look at anything when you add the little e in front of some pre-existing service. Well... It's understanding, I mean, this is kind of common sense, that what you've done is taken a brick and mortar service and moved it into cyberspace, right? And now we've had registered mail going on for a long time, and now you have registered email. Correct. And if the Postal Service were in that space in any manner, it's not just the cyber world, it's the electronic message transmission world, because that's what the application also says. You have to look at the specific terms of the application. And the analogy I would give, the kind of revolution that we're talking about from hard copy to electronic message transmission, at the turn of the 19th to 20th century, horse and buggy to automobile. Huge revolution. I think somewhat analogous. If I were the Ford Motor Company, and I wanted to compete with the horse delivery services, and I said, I can provide the same level of service, same quality, in an entirely different way. And I take a term, let's say their product was called, we called it the pony delivery service. And if I changed it to a pony, a for automotive, and no one had any reason to believe that it was the same company, because they were horses, not machines. That's not infringement, and it's not likely to be used. But it seems to me the questionable part of the questionable premise to your example is the no one would have any reason to believe it's the same. If, for example, I had the buggy service, and it was Bryson's, and it was really well known all around the country that Bryson's buggies are better than everybody else's buggies. And you came along and decided to start an automobile service to do the same kind of delivery, and you called it the A. People are going to assume that this is either licensed by or somehow affiliated with Bryson, or at least there's a good chance of that under the circumstances, and that's where you have likelihood of confusion. That's the problem I think that you have in this case, that people may be wrong in thinking that the postal service is now into this or somehow blessing this, but that's an assumption that will flow from the use of the term registered mail. To me that's the problem that I see with your case. Well, but the only evidence of potential confusion in this context is that there isn't any. And what I mean by that is, first of all, the postal service is forbidden, legally forbidden, from entering into that space, from doing that. But if you asked a thousand people on the street, or somewhere other than Washington where you'd find a hundred lawyers out of that thousand, if you asked a thousand people on the street, is the postal service forbidden by law from engaging in electronic communication services, I'm guessing you wouldn't find three that would know the answer. But if you asked those same thousand people, does postal service provide the commercial delivery of electronic messages, I don't think you'd find a single person who'd say yes. Except the person that had looked at your website and said, yeah, I think so, because I saw e-registered mail. But registered email, not e-registered mail, it's registered email. And that is a difference, because adding the e to mail is transformative. It's not, and it's not even like all the other, the e-books. Why did you use the term registered email? You could have done something like secure email, or our post email, or something like that. Why did you go with registered email? Because the public knows that registered mail provides security. But this is in the electronic world. You get some kind of proof of delivery receipt. Correct. A physical document from the post office, that's what you get. And you have to do everything physically to get that. They don't send those by e-mail? The final step in the process, if you want to send a registered e-mail and get that proof of delivery by e-mail, you have to physically take yourself to the post office. You have to deliver to a postal service employee a physical document. You have to physically pay. You have to physically fill out the form. The postal service has to physically transport the document. They have to get the various registration signatures physically. And only then will they transmit an e-mail to you saying it's been delivered. So no one who uses registered mail would be confused. No one who uses the ARPO service would be confused, because if you use the ARPO service, you know you're not contracting with a post office. So you've got this hypothetical consumer who might have seen something that says registered e-mail. Why would that person think it's the post office? It's not accompanied with other indicia of the post office. It doesn't have that stylized eagle. It doesn't say the postal service or USPS anywhere. It doesn't have the shade of blue that we all associate. Every mail truck and every mailbox and the letter carriers all have that same shade of blue. So it doesn't have any indicia of being with the postal service. The whole point of the postal service argument is because there's this one-letter difference, consumers are likely to be confused. And that one-letter difference is enormous because it changes the word mail to e-mail. And changing the word mail to e-mail, not only is it a recognized word. You look in the dictionaries and you'll find e-mail. All the other e-words, e-file, e-book, e-fares, et cetera, et cetera, except in slang dictionaries, you won't find those words there. You will find e-mail. It is a word, a separate word, and it points away from the postal service. And so anyone who sees the word e-mail, whether it says registered or any other term that might be similar to the postal service, is not going to be confused. And we're touching on the first of the DuPont factors that the board found. The second one, similarity of services, the board ignored the application, which requires them to consider the application itself, which says delivery of messages by electronic transmission. The service of the e-mail, but, you know, this is registered e-mail, and this is more about the transmission of mail electronically in a secure way with proof of delivery, right? Transmission of mail electronically. So, I mean, that's why I think the trademark board was trying to say the purpose of your service and the post office's registered mail service is ultimately pretty similar because it's all about transporting some kind of message or document with security and proof of delivery. Yes, but that all ignores the application, which also limits it to electronic message transmission, which the postal service doesn't do. If you want to send an e-mail to someone, no matter what kinds of bells and whistles you want to put on it, you're not going to go to USPS.com in order to do that. That's the distinction. You're not going to go to a postal service site. You're not going to think there's any way you can transmit an electronic message using the postal service. That's obviously the heart of our argument. The distinction between mail and e-mail, between brick-and-mortar world and the electronic world, is a serious one. And the fact, we haven't even gotten third-party registrations, these boards rely on some third-party registrations, but the fact that other companies might have registered marks in both hard copy and physical and electronic fields doesn't prove that they're in commercial use, doesn't prove that anyone knows about those products. This court's precedent on third-party registration evidence for purposes of likelihood of confusion seems to me uniform and against what the board did. What the board said was, well, it shows that these kinds of services could, in theory, emanate from the same source. Ms. Bensvie, you're into your rebuttal. Do you want to save the remainder of it, or you can keep going if you like? Yes, I will save the remainder. Okay, thank you. All right. Let's hear from Ms. DeMarschi. Okay, thank you. You've reserved three minutes, so you're going to talk about 2D confusion and descriptiveness, right? Yes. Okay. And I've reserved only as to the cross-appeal issue. Right. Our post's contentions before this court, both in their briefs and as you've heard this morning, rest entirely on the idea that there is an impermeable wall of separation between electronic communications and hard copy communications, such that a reasonable consumer would never be confused. And in one sense, our post is right. No one is ever going to confuse an email for a hard copy piece of mail. But that is not the fundamental inquiry under the Lanham Act regarding likelihood of confusion. The Lanham Act is not concerned with confusion of goods. It's concerned with confusion of source. And so the question is, can two different goods, maybe even really different goods, be perceived by the consumers and their overall commercial impression as they encounter them in the market as emanating from the same brand? And we know, in answer to Judge Chen's question about why did our post pick this name rather than another name, our post told the Postal Service that the reason that it was picking this name, the reason it wanted registered email rather than secured email or our post email, was because it wanted to trade on the public trust of the Postal Service brand and to do so not by calling it USPS email but by calling it registered email because our post thought the word register in the public mind meant Postal Service, I trust the Postal Service, it's secure. That's the quintessential example of source confusion. And that's the factual findings that the Board made. And really this is a case about factual findings of the Board because the Board looked at exactly the same information and argument that you've been hearing about today and the Board said we think the market is for transmitting secure messages, that people have a choice between doing it electronically, doing it in hard copy, maybe doing it in both, and that this is all actually directed at the same market. And so we're going to make a factual finding of likelihood and confusion based on the evidence that these are, if not identical, then at least overlapping markets. And, of course, under the substantial evidence standard, if any reasonable person could reach that conclusion from the evidence, then it is to be affirmed. Can you explain the usage of the third party registrations in this case? Apparently we have case law that says you're not supposed to rely on those third party registrations to prove actual use and yet you were citing something else that says, well, maybe they can't be used for actual use but they can still somehow be used to be probative to prove something that's different than actual use. But I guess what I'm trying to say is I'm a little confused on how the law works. Can you explain it to me? And the law is not quite as black and white as third party registrations are never usable. There are multiple cases in which the Board and this court have looked at evidence of what third parties do in the same market to tell us something about how consumers perceive goods. Right, what they're actually doing in commerce, what those third parties are actually doing in commerce. Not always what they're actually doing in commerce. The Tektronix case is an interesting one in this regard. It's Tektronix versus Daktronix. And the issue was what does that suffix mean? Does that, like E to us means the virtual version of brick and mortar, the case was about whether adding tronic or tronix at the end of a word indicates this is the electronic version of something. And in that case, this court's predecessor said that third party registrations provide some evidence that the common understanding of those suffixes is electronic. They looked at a bunch of registrations that used the same suffix for electronic products and they analogized it to looking at a dictionary. It's important to recognize, though, that there is not only evidence in this record of third party registrations being in both markets. There is evidence of the Postal Service doing things that relate to the market for electronic message transmission. In fact, exactly the same way our post does. You heard this morning that you'd never think you were getting e-mail from the Postal Service because the Postal Service doesn't send e-mail. Our post doesn't send e-mail either. Our post's big product advantage, and you'll find this in the Record Appendix Volume 1 at page 420, is that it provides an add-on that adds on to anybody's e-mail account. So you can have a Yahoo account, you can have an AOL account, you can sign up with our post and get them to essentially postmark your message on its way through cyberspace so that you can get a receipt and the party on the other end can tell it wasn't altered. Well, the Postal Service electronic postmark service can be used in exactly the same way. So we have that record evidence. It's not a third party registration that the Postal Service operates in this manner. There's also a newspaper article in the record about UPS offering an e-mail product that is actual usage. It's a Computer World newspaper article, I think. So the third party registrations are relevant. They're relevant for a fairly limited purpose of showing that 30-some-odd other people don't think these are two markets because they tried to register something to use it in both markets. It's a small factor. It's not the only evidence supporting the conclusion that these are, if not the same, then at least overlapping. With regard to the cross-appeal, I'm happy to discuss the same factor if the Court would like to do so. The importance there, of course, is that it's just an additional factor in support of inferments. Therefore, not really an appropriate cross-appeal, right? Because we had an appropriate cross-appeal, we didn't want to be accused of waiving anything, so we tried to be careful about explaining that that was the only reason we were cross-appealing it. The actual cross-appeal issue is with regard to the registered receipt and return receipt marks, and that's the descriptiveness issue. In that regard, what our post-registered... Did you argue that there was a likelihood of confusion with those marks, too? And why didn't you if you didn't? My understanding is that both parties agree that just the words return receipt are not sufficiently – are descriptive and not trademarkable. So we aren't trying to assert that. They're trying to assert that they've trademarked it just by adding punctuation around the initial R, and that has two problems for them. One is the case law, and here I'm thinking Vanilla, Gorilla, and Lighthouse, that say just adding punctuation doesn't take something descriptive and make it distinctive. And their other problem, of course, is that the punctuation they picked isn't random. It is the punctuation that is one of the couple of ways in which you can use their service. And so that's the functionality case law that says someone who's knowledgeable about your service will immediately see that and think of that as distinctive of the functionality of your service. And it's certainly – it's even part of their patent that that's actually one of the ways in which you invoke the service. But there are multiple ways that you could invoke that service if you were another provider. You're not being foreclosed from any considerable portion of the market by virtue of their mark in terms of its functionality. Certainly. Really, it's the role of punctuation in making a otherwise descriptive mark distinctive that's much more important. Well, I suppose Yahoo would still object if somebody came up with Yahoo question mark as opposed to Yahoo exclamation point. But I would think at some point punctuation starts to make a mark distinctive. And it could be just a parenthesis, maybe not a comma here, a hyphen here. You couldn't say Coca-Cola is trademark registered for the hyphen, but if you wrote Coca-Cola with no hyphen, that'd be fine. But still, it does seem to be extreme to say that all punctuation is irrelevant. And what this court has said, and Vanilla Gorilla is really the best case for this, is that punctuation that doesn't really change how we perceive or would speak the mark is meaningful. So Vanilla Gorilla is the 30-inch car wheel rim case, those decorative rims that people put on their cars. And what they tried to register was a mark for 3-0-X, which the court looked at and said, somebody's going to look at that and say 3-0s or 30s, both of which are ways to refer to the 30-inch car wheel rims with which you intend to use this. Just the punctuation that doesn't change the way that we would pronounce it is not sufficient to reach the level of this instance. Right, but the TTAB here said this is kind of an unusual use of the parenthesis. It's unconventional, right? We're now outside the convention. Now we're putting a parenthesis around the R, which immediately alerts the reader that there's something different going on here. Maybe is that a typo or is that intentional? And if it's intentional, what's going on there? And the hard part with that analysis is 3-0s is not the way that we write 30s, but we would speak it that way. So that doesn't square with the Vanilla Gorilla analysis of that mark. And then you run right into functionality, which is the only thing that that distinctive punctuation does. It's not fanciful punctuation. It's functional punctuation. And the functionality case law says if someone who's familiar with your product would immediately have called to mind the functionality of your product by the mark, then that doesn't solve your need for distinctiveness. They could have the functionality that would be performed. They could set it up so that the functionality would be performed by, for example, asterisk R asterisk. They could. And you'd have, I guess, the same objection if, in fact, that was their mark and that was their function. Yes. But I guess the point is that a registration of this particular mark for a return receipt with the R surrounded by parentheses, it wouldn't exclude someone else from doing something like return receipt with, I don't know, parentheses around the T at the end of receipt. Or preclude the Postal Service from continuing to use the term registered receipt and returned receipt without any punctuation as it has done for 100 plus years. Because they've disclaimed those words. They've disclaimed the term receipt, registered receipt. And so it all really, for them, the protection boils down to that first R with the parentheses around it. And the vanilla gorilla 30s case and the lighthouse case, which is Caesar dressing under the mark Caesar Caesar, tell us that just adding that punctuation is insufficient to meet the standard for registrability. I'm running very close to the amount of time I have reserved. I'm happy to answer additional questions. Okay. Thank you.  Thank you, Your Honor. Very briefly on the descriptiveness. The R Post got a trademark for print R closed print. This is a branding issue. And they're consciously branding their products with that mark as part of the brand. That takes it out of the merely descriptiveness category. And the functionality, they could… Can you explain what does disclaimer mean? I think I understand it. But I just want to understand your understanding of what happens when – what is the trademark applicant giving up? And what does the public get when a trademark applicant does a disclaimer? What the trademark applicant gives up is the right to claim that anything other than the exact formulation as shown in the application is what they're claiming to be protectable. So… So if someone else, some consumer was – not consumer, competitor was using return receipt exclamation point, you wouldn't be – would you be able to go after someone like that with your return receipt registration with the parenthesis around the R? I don't think so. But if they did paren R closed paren return receipt and added the exclamation point, perhaps we would. Because then you get into how distinctive it is and how much it does, the exclamation point, how significant that would be. So without the parens, absolutely. I guess what bothers me about this disclaimer practice is could someone get a registration for the word Disneyland with the D surrounded by parenthesis and then disclaim Disneyland and say, now I want to get a – to sell sneakers? I mean, does that make sense? Yeah, and I'm sure the Walt Disney Company would be here before you if they'd lost it. But would they win? Okay. It may well depend on what the products are. Someone like a Disney is sort of everywhere because one of the issues is where the old party, the analog to the postal service, what business are they in? And is it something they can move into? If it's the Lexus-Lexus case, the car and the legal services, and I don't remember which one was first. But one sued the other, and the ultimate conclusion was because the one couldn't – the former owner would be moving into the business of the new owner and no one would be confused. That's part of our argument here on likelihood of confusion. Postal service, counsel mentioned there's some news article about USPS in an email type of service. Yes, before 2006, it could have, and it made all sorts of efforts to go into that business. And the Presidential Commission issued its report in 2003, and one of the quotes we quoted was, you know, no one knows – because then, at that point, postal service had made all these efforts. They called them dubious forays and said no one knows the postal service is even in this business. We're trying to be in this business. And that's, in our view, a significant reason why no one would think that something that has email in the word, in the name, whether it's registered or, you know, they have a certified email. They have other email – I mean, they have certified mail. They have other products that, you know, first-class mail. If you sell something that's called first-class email, is anyone going to be confused that that's the postal service? The point is the email is transformative. It changes. It's not just saying it's the electronic version, but it's the version that the postal service doesn't give you. That's the point, and that's why there's no likelihood of confusion. Thank you. Very briefly, I'm sorry. I'm out of time? No, you can say a couple sentences. Okay. On third-party registrations, the Tektronik case isn't anything like this case and what the board did. What the board did here is say these third-party registrations show – It's in our brief. Okay, thank you. Thank you. Just one point, and that is, as set forth at length in our brief, we disagree with Mr. Bensie's characterization of what the postal service is and isn't allowed to do in the electronic realm. And so does – Could you just talk about the cross-appeal? Oh, I'm sorry. I thought he was saying that was relevant to your arguments on the cross-appeal. That's the only reason I'm mentioning it. If it's not relevant to the cross-appeal, then I will rest on my briefing on that point, and I have nothing further. Okay, thank you. The case is submitted.